IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

       Plaintiff,

v.   Criminal Action No. 5:06CR55
(STAMP)

HEIDI JANELLE SILVER MYERS,

       Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT
HEIDI JANELLE SILVER MYERS'
MOTION FOR JUDGMENT OF ACQUITTAL**

I.  Procedural History

Currently before this Court is the defendant's post-trial motion for a judgment of acquittal. Following a bench trial, the defendant, Heidi Janelle Silver Myers, was convicted of criminal contempt in violation of 18 U.S.C. § 401(3). Specifically, Myers was found guilty of willfully and knowingly disobeying and resisting a lawful writ, process, order, rule, decree and command of the United States District Court for the Northern District of West Virginia--namely separate grand jury subpoenas commanding the production of certain closed case files, a tower-type server, and a backup hard drive on December 5, 2006--by failing to appear and produce those requested documents and items at a session of the grand jury on that date.

This Court has reviewed the evidence received at trial, as well as the relevant law and the written memoranda submitted by the

parties in support of their respective positions. For the reasons set forth below, this Court finds that the defendant's motion for a judgment of acquittal must be denied.

## II. Applicable Law

### A. Federal Rule of Criminal Procedure 29

Federal Rule of Criminal Procedure 29 provides that a motion for a judgment of acquittal must be granted where "the evidence is insufficient to sustain a conviction" of the offense charged. Fed. R. Crim. P. 29(a). For purposes of a Rule 29 motion, courts are to determine the sufficiency of the evidence by considering both "the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government." United States v. Burgos, 94 F.3d 849, 863 (4th Cir. 1996) (en banc); see United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) ("A defendant challenging the sufficiency of the evidence to support his conviction bears 'a heavy burden.'").

A verdict of guilty must be sustained if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Myers, 280 F.3d 407, 415 (4th Cir. 2002). In assessing the sufficiency of the evidence, the reviewing court must consider circumstantial as well as direct evidence. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). If the evidence supports more than one reasonable interpretation, the trier of fact weighs the credibility of

evidence and decides which interpretation to believe. See <u>United States v. Murphy</u>, 35 F.3d 143, 148 (4th Cir. 1994) (in context of jury trial, reviewing court must defer to jury's decision about which interpretation to believe if such interpretation is reasonable and supported by the evidence).

B.  <u>Elements of Offense</u>

Title 18, United States Code, Section 401 provides, in pertinent part:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401 (2007).

To support a conviction for criminal contempt in this action, the Government was required to prove beyond a reasonable doubt that:

> a.  Myers was served with lawful subpoenas to appear at a grand jury sitting at the Wheeling point of holding court of the United States District Court for the Northern District of West Virginia on December 5, 2006;
>
> b.  Myers failed to comply with those subpoenas; and
>
> c.  Such failure to comply was willful.

Regarding the element of willfulness, "[a]ll that is needed . . . is a deliberate intention to do the act." <u>Licavoli v. United States</u>, 294 F.2d 207, 209 (D.C. Cir. 1961). Willfulness in the

3

criminal contempt context is "'a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.'" United States v. Greyhound Corp., 508 F.2d 529, 531-32 (7th Cir. 1974) (quoting United States v. Seale, 461 F.2d 345, 368 (7th Cir. 1972)). In a criminal contempt case, as in other areas of law, willfulness for criminal contempt may "be inferred from the facts and circumstances in proof." Id. at 532.

III. Discussion

A. Evidence Presented at Trial

The unrebutted evidence at trial demonstrates beyond a reasonable doubt that Myers was served with lawful subpoenas to appear at a grand jury sitting at the Wheeling point of holding court of the United States District Court for the Northern District of West Virginia on December 5, 2006. (Gov't Exs. 1 and 2.) The unrebutted trial evidence also demonstrated that Myers failed to comply with those subpoenas. (Gov't Ex. 3.) Myers does not contest the sufficiency of evidence concerning these two elements. However, she does claim that she lacked the requisite willfulness.[1]

---

[1] The Government correctly observes that Myers does not directly assert that the evidence presented at trial was insufficient to sustain a finding of guilt. Rather, Myers argues that the trier of fact--here, this Court--failed to consider an alternate interpretation of the evidence that Myers argues would negate her willfulness to violate the subpoenas. If Myers trial had been a jury trial, this Court would be barred from substituting a different, reasonable interpretation for the jury's interpretation. United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc); United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994). The parties have cited no authority, and this

4

To prove the element of willfulness, the Government was required to demonstrate that Myers had a deliberate intent not to appear before the grand jury at the time set forth in the subpoena. At trial, the Government presented evidence that Myers did so fail to appear. (Gov't Ex. 3.) The Government also presented evidence that Myers knew of the subpoenas and of what items were being requested by the subpoenas. (Trial Tr. Vol. 2, 236, May 2, 2007.) The Government's evidence included testimony by Myers' previously retained counsel that he had advised Myers that failure to comply could result in Myers' being held in contempt. (Trial Tr. Vol. 2, 237.) The evidence also included eyewitness testimony that on the day of her scheduled grand jury appearance Myers seemed to be suffering from no physical impairment that would have prevented her from appearing. (Trial Tr. Vol. 1, 40-41, May 1, 2007.) The Government further presented evidence that Myers was advised by her newly retained counsel that she should disobey the court order and not comply with the subpoenas by not appearing in Wheeling before the grand jury. (Trial Tr. Vol. 1, 66.)

---

Court has found none, addressing the propriety of a trial court's adopting a different, reasonable interpretation from that adopted by the same judge who presided over the bench trial at which the defendant was found guilty. Given the absence of legal authority and this Court's conclusion that Myers' post-trial arguments are not supported by the evidence presented at trial, this Court assumes, without deciding, that it may substitute a different, reasonable interpretation on a Rule 26 motion for its own interpretation at the close of the bench trial.

At trial the defendant argued as an affirmative defense that she relied in good faith on the advice of counsel, which reliance she claimed negated the element of willfulness in her failure to appear before the grand jury. This Court found, as a matter of law, that although a defendant's good faith belief that he or she is complying with a lawful court order may preclude a finding of willfulness, good faith reliance on the advice of counsel to disobey an order will not. Memorandum Opinion and Order Finding Heidi Janelle Silver Myers Guilty of Criminal Contempt 19-20 ("Opinion").

This Court made the further, factual, finding that even if the advice of counsel defense were appropriate in this case, the defendant failed to produce sufficient evidence in support of that defense. (Opinion 20.) First, there was insufficient evidence presented that Myers even relied upon her attorney's advice in disobeying the grand jury subpoenas. The only evidence presented in support of Myers reliance is the testimony by her counsel that he had advised her not to appear and that "her reason for not appearing by herself is because I told her not to appear." (Trial Tr. Vol. 1, 124.) The Court concluded that Myers' failure to appear and her attorney's testimony that he told her not to appear provided insufficient evidence to demonstrate the reliance element of the advice of counsel defense, especially in light of testimony by her previous counsel that Myers sometimes followed his advice

and sometimes did not. (In her motion for acquittal, Myers argues that her previous attorney's testimony supports her position that the reliance element was satisfied because the attorney also testified that when she did not agree with his advice, she would protest strenuously. All this indicates is that Myers protested when she disagreed with her attorney's advice. It in no way demonstrates that absent her attorney's advice not to appear, she would have complied with the subpoenas. Based upon the evidence presented at trial, a reasonable juror could conclude that Myers' disobedience of the grand jury subpoenas was an independent decision that Myers made without any reliance on her counsel's advice.

Moreover, there is evidence that even if Myers relied on her attorney's advice not to appear, such reliance was not made in good faith. First, the testimony at trial demonstrated that Myers had been informed by her previous attorney of the consequences of failing to comply with the subpoenas and of at least some of the available alternatives to simply disobeying the order of the Court. (Trial Tr. Vol. 2, 237-38.) The evidence at trial demonstrated that both Myers, who had been a practicing criminal defense attorney for a number of years, and her counsel were aware that Myers had other alternatives available other than simply not appearing, including filing motions before the Court seeking relief from the directions contained in the Court's orders. Neither Myers

nor her counsel filed any such motion or otherwise communicated in writing with the Court to bring this Court's attention to the issues which Myers raised in her defense at trial, even though Myers' counsel was advised to do so by a law clerk in this judge's chambers when counsel contacted chambers to inform the Court of the reasons why Myers would not be appearing before the grand jury that morning. (Trial Tr. Vol. 1, 138.)

Second, on the day before her scheduled grand jury appearance, immediately after her previous counsel had reached an agreement with the Government on how to accommodate Myers' concerns about attorney-client and work-product privilege--an agreement which Myers had not authorized and did not approve--Myers formally retained substitute counsel. (Trial Tr. Vol. 1, 62-63.) However, Myers failed to show that she fully disclosed all facts concerning her case to her newly retained counsel. Myers' new counsel had concerns about issues relating to attorney-client privilege and work-product doctrine relating to the subpoenaed documents and possible issues pertaining to waiver of those privileges. (Trial Tr. Vol. 1, 82.) No evidence was presented at trial that Myers informed her counsel that the government had secured a taint team to attempt to address these issues. Defendant's new counsel advised her not to appear before the grand jury because neither he nor his law partner could be there with her at the scheduled time. (Trial Tr. Vol. 1, 66.) He also informed Myers that he would try

to obtain a continuance. (Trial Tr. Vol. 1, 81.) However, the attorney's advice not to appear seems to relate only to the scheduling conflict that he and his partner had with the date and time set for Myers' grand jury appearance. Because the evidence shows that Myers was a practicing criminal attorney who had been informed by former counsel of the consequences for failing to comply with the grand jury subpoenas and who was aware of alternatives to simply not appearing, a reasonable juror could conclude that any reliance by Myers on counsel's advice not to appear because of a scheduling conflict, which the Court may or may not accommodate, was not made in good faith and therefore does not negate willfulness.

B. <u>Myers' Rule 29 Arguments</u>

1. <u>Good Faith Pursuit of a Mistaken but Plausible Alternative</u>

Defendant argues in her Rule 29 motion that this Court, as the finder of fact, failed to consider the possibility that Myers was pursuing a plausible but mistaken alternative--namely, obtaining a continuance--which negated her willfulness to violate the subpoenas. In support of her argument, defendant cites a case from the United States Court of Appeals for the Fourth Circuit for the proposition that willfulness in a criminal contempt case "does not exist where there is 'good faith pursuit of a plausible though mistaken alternative.'" <u>United States v. McMahon</u>, 104 F.3d 638,

9

645 (4th Cir. 1997) (quoting United States v. Greyhound Corp., 508 F.2d 529, 532 (7th Cir. 1994)).

As a preliminary matter, this Court observes that Myers' reliance upon these cases is misplaced. The defense that a good faith pursuit of a mistaken but plausible alternative negates willfulness concerns the definiteness, clarity and specificity of the court order in question. "In order for a violation of a court order to constitute criminal contempt, constitutional principles of fair notice require that the order be definite, clear, and specific enough so that it leaves no doubt or uncertainty in the minds of those to whom it was addressed." McMahon, 104 F.3d at 642. "To provide a defense to criminal contempt, the mistaken construction must be one which was adopted in good faith and which, given the background and purpose of the order, is plausible." Greyhound, 508 F.2d at 532. Thus, a defendant may raise the defense that he or she was, in good faith, pursuing a mistaken but plausible construction of a court order if that order is insufficiently definite, clear, and/or specific to eliminate potentially conflicting interpretations.

Myers raises no such challenge. Because Myers does not argue that the subpoenas lacked clarity, definiteness, or specificity, her reliance on McMahon and Greyhound is misplaced, and her argument inapposite.

Although Myers does not argue that the subpoenas lacked definiteness, clarity, or specificity, she nevertheless contends that the willfulness element is negated under the "good faith pursuit of a mistaken but plausible alternative" defense. Myers maintains that her attorney informed her that he *would* obtain a continuance and advised her that she should not go to Wheeling to appear before the grand jury. However, what Myers' attorney actually testified at trial was that he told Myers he would *try* to obtain a continuance and that he believed he would be able to do so. Importantly, at no point prior to her mandated appearance before the grand jury did Myers' attorney inform her that he had succeeded in obtaining a continuance. Thus, even assuming that the "mistaken alternative" defense were applicable here, to the extent that Myers argues her pursuit of a continuance negated her willfulness because she believed a continuance had been effectuated, her argument must fail because no evidence presented at trial indicates anything about what Myers believed.

Myers' post-trial assertions, by her counsel, that she believed a continuance had been obtained do not constitute evidence admitted by the Court and presented to the trier of fact at trial. Additionally, despite defendant's post-trial assertions that her counsel assured her that a continuance would be granted and that Myers believed her failure to appear was permissible because she believed a continuance had been granted, the evidence presented at

11

trial supports, at most, a finding that her counsel informed Myers that he would try to talk to the government attorney about obtaining a continuance, that he would try to obtain a continuance, and that he expected to be able to obtain a continuance. Nothing in the evidence presented at trial supports Myers' post-trial assertions that she believed she was complying with the subpoena because a continuance had been granted.

2. <u>Good Faith Reliance on Advice of Counsel</u>

Myers' second argument is that this Court erred by finding that a good faith reliance on advice of counsel defense is inapplicable to this case and that this Court erred further by finding that she had not put forth sufficient evidence in support of her good faith reliance defense. Myers again asserts that she believed she was complying with the subpoenas after she was advised by her attorney that he would obtain a continuance. She also argues that she reasonably and in good faith sought new counsel after her former counsel withdrew from his representation of her and that, accordingly, nothing in her conduct in the days before her grand jury appearance demonstrated bad faith. Myers further contends that this Court erroneously relied upon <u>N.L.R.B. v. Berkley Mach. Works & Foundry Co.</u>, 189 F.2d 904 (4th Cir. 1951), to find that a good faith reliance on counsel defense is not permissible in the Fourth Circuit because that case confuses civil and criminal contempt. Finally, Myers argues that the public

policy concerns which have motivated other circuits to reject the advice of counsel defense are not present here. This Court will address each argument in turn.

      a.    <u>Compliance with the Subpoenas</u>

Myers claims that she put forth sufficient evidence to negate the willfulness element because her attorney's efforts to obtain a continuance and his assurances that he would obtain a continuance demonstrate that Myers believed a continuance had been granted and that she was therefore in compliance with the subpoenas. Two observations bear repeating here. The first is that no evidence whatsoever was presented at trial concerning Myers' belief about whether she was complying with the subpoenas or about whether a continuance had been granted. The second is that Myers mischaracterizes her attorney's trial testimony as stating that he informed Myers that he *would* obtain a continuance when what he actually stated is that he informed Myers that he would *try to* obtain a continuance and he believed that he would be able to do so. Given the complete absence of evidence that Myers believed a continuance had been granted together the evidence presented that Myers' attorney never advised her that he had succeeded in obtaining a continuance, a reasonable juror could conclude (1) that Myers was not advised by her attorney that he would, without question, obtain a continuance; (2) that Myers did not believe that she was complying with the subpoenas; and/or (3) that any belief

Myers held that a continuance had been obtained was not a reasonable or good faith belief.

    b.    <u>Retention of Substitute Counsel</u>

In further support of her argument that this Court erred by finding that she did not present sufficient evidence of good faith reliance, Myers argues that she reasonably and in good faith sought new counsel after her former counsel withdrew from his representation of her and that, accordingly, nothing in her conduct in the days before her grand jury appearance demonstrated bad faith. However, even assuming the applicability of the advice of counsel defense, the question is not whether Myers acted in good faith in retaining new counsel but whether she had a good faith belief that she was complying with the subpoenas when she failed to appear before the grand jury. As discussed above, Myers failed to establish that she held a good faith belief that she was in compliance with the subpoenas.

    c.    <u>Remaining Arguments</u>

In her last two arguments, Myers contends (1) that this Court erroneously relied upon <u>N.L.R.B. v. Berkley Mach. Works & Foundry Co.</u>, 189 F.2d 904 (4th Cir. 1951), to find that a good faith reliance on counsel defense is not permissible in the Fourth Circuit because that case confuses civil and criminal contempt and (2) that the public policy concerns which have motivated other circuits to reject the advice of counsel defense are not present

here. These contentions do not even indirectly challenge the sufficiency of evidence presented at trial. Accordingly, this Court finds it sufficient to observe that even if this Court has misconstrued N.L.R.B. v. Berkley Mach. Works & Foundry Co., 189 F.2d 904 (4th Cir. 1951), and even if a good faith reliance on advice of counsel defense were applicable here, sufficient evidence was presented at trial for a reasonable juror to find that Myers did not rely on the advice of counsel in failing to appear before the grand jury or that if she did rely on such advice, her reliance was not made in good faith.

## IV. Conclusion

For the reasons set forth above, this Court finds that the evidence presented at trial, viewed in the light most favorable to the government, was sufficient to sustain the conviction of Heidi Janelle Silver Myers for the offense of criminal contempt. Therefore, the Myers' motion for a judgment of acquittal is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the defendant and to counsel of record herein.

DATED:   June 3, 2008

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE